**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| GERTRUDE CORETTA FENNELL HAMILTON,    )<br>                                                          )<br>                    Plaintiff,            )<br>                                                          )<br>          vs.                                          )<br>                                                          )<br>DAYCO PRODUCTS, LLC, and MARK )<br>IV INDUSTRIES,                               )<br>                                                          )<br>                    Defendants.        )<br>_____) | C.A. No.: 2:07-2782-PMD-RSC<br><br>**ORDER** |

In this employment discrimination action, Plaintiff Gertrude Coretta Fennell Hamilton ("Hamilton" or "Plaintiff"), alleges that she was fired because she was regarded as disabled, even though she could still perform all the functions of her job, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* This matter is before the court upon Defendants Dayco Products, LLC ("Dayco") and Mark IV Industries' ("Mark IV") (collectively, "Defendants") Motion for Summary Judgment. The record includes a Report and Recommendation ("R&R") of United States Magistrate Judge Robert S. Carr, which was made in accordance with 28 U.S.C. § 636(b)(2)(i). A party may object, in writing, to a R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff filed a timely objection to the R&R. For the reasons set forth herein, the court grants Defendants' Motion for Summary Judgment and adopts the Magistrate Judge's R&R into this Order.

**BACKGROUND**

Dayco is in the business of making automotive supplies for its parent company, Mark IV. Plaintiff began working for Dayco in 1976, and was employed in various positions with the

company, the latest being Quality Specialist. Plaintiff's responsibilities in this position were very broad, and included accepting return shipments of goods from customers, testing samples of Dayco's products, and receiving customer feedback and complaints over the phone and entering them on the computer. Plaintiff was paid $57,000.00 per year.

On May 20, 2005, Plaintiff, while seated in her rolling office chair, slipped and fell out of the chair, falling to the ground on the right side of her body. Plaintiff tore the rotator cuff in her right shoulder in the fall. She also began experiencing severe back and neck pain, which in turn led to debilitating headaches. After seeing a physician about her injury, on May 23 she was put on "modified duty," which meant that there were certain restrictions on the tasks she could be asked to perform while at work. On July 12, she was changed from "modified duty" to "alternate work," meaning she could no longer perform the tasks of her previous job and was given different work to do. On August 5, a physician instructed her not to use her right arm at all at work for at least two months.

On September 15, 2005, Plaintiff was placed on a medical leave of absence from her employment with Dayco based upon her own complaints of continued pain and restrictions on what she was able to do at work. At this time, she was given long-term worker's compensation benefits as well as a biweekly check from Dayco. Dayco's general policy was to give workers up to 26 weeks of compensation for injuries suffered while on the job, but after that, if the worker was unable to resume work, to terminate his or her employment. It was also during this time that Plaintiff was informed by a physician that she would be able to return to work if she underwent surgery to repair her rotator cuff. Over the course of the following months, Plaintiff twice scheduled the surgery, but both times opted not to have the surgery performed.

On June 26, 2006, Plaintiff filed for long-term social security disability benefits, claiming that she was completely unable to work. Plaintiff had been receiving long-term worker's compensation benefits and a supplemental check from Dayco until June 29. At this time, her worker's compensation benefits were terminated for failure to seek treatment, and her employment was terminated by Dayco. She also qualified for long-term disability benefits from Aetna Insurance, which were made retroactive to March 15, 2006.

On August 4, 2006, she filed a claim for discrimination with the South Carolina Human Affairs Commission and the United States Equal Employment Opportunity Commission. She alleged that she was terminated from her employment even though she was still capable of performing the job. Both claims were later dismissed by the respective agencies as being without merit.

On November 30, 2007, Plaintiff received a notice of decision from the Social Security Administration, which found that she was totally disabled, and thus entitled to permanent disability benefits. The decision established the date of the onset of Plaintiff's disability as September 15, 2005, the date she was placed on medical leave of absence.

On August 13, 2007, Plaintiff filed her Complaint in this Court, alleging wrongful termination in retaliation for filing for worker's compensation benefits in violation of South Carolina law, and termination for being perceived as disabled even though she was still capable of performing her job in violation of the ADA. On October 11, Defendants filed an Answer to the Complaint and a Counterclaim against Plaintiff.[1]

---

[1] The counterclaim is not before the Court on the present Motion, and therefore the Court does not address its merits in this Order.

3

On May 28, 2008, Defendants filed a Motion for Summary Judgment. Plaintiff filed a Response in Opposition to Defendants' Motion on June 20, to which Defendants filed a Reply on June 27. On August 22, the Magistrate Judge issued his R&R, recommending that this Court grant Defendants' Motion for Summary Judgment because Plaintiff failed to establish herself as a qualified individual to bring an ADA claim. On September 11, Plaintiff filed an Objection to the Magistrate Judge's R&R, to which Defendants filed a Response on September 30.

## STANDARD OF REVIEW

### I. Magistrate Judge's R&R

This Court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). Where no specific written objections are made, the Court "need not conduct a *de novo* review, but must instead only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). After a review of the entire record, the R&R, objections filed by Plaintiff, and Defendants' response to those objections, the Court finds the Magistrate Judge fairly and accurately summarized the facts and correctly recommended granting the Motion for Summary Judgment.

### II. Motion for Summary Judgment

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

4

All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992) (*citing Richmond, F. & P. R.R. v. United States*, 945 F.2d 765,768 (4th Cir. 1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992)). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

## ANALYSIS

As an initial matter, the Court addresses the Magistrate Judge's recommendation that Plaintiff's second cause of action, for wrongful termination in retaliation for filing a worker's compensation claim, has been abandoned by Plaintiff and thus should be dismissed from the present action. In Defendants' Motion for Summary Judgment, they asserted a number of reasons why this cause of action failed as a matter of law and why this court should grant summary judgment on the claim. In Plaintiff's Response to Defendant's Motion, she did not respond to Defendants' arguments. In the R&R, the Magistrate Judge recommended that this court dismiss Plaintiff's state law claim for wrongful termination, and Plaintiff did not object to this recommendation in her Objections to the R&R. Accordingly, since Plaintiff has ceased asserting that she is entitled to recovery on the cause of action and has failed to respond to either the Defendants' Motion for Summary Judgment or the Magistrate Judge's R&R on this issue, Plaintiff's claim that she was terminated for filing a worker's compensation claim in violation of state law is hereby dismissed.

The Court now turns to Plaintiff's ADA claim.  Claims under the ADA generally fall into one of two categories.  A plaintiff can sue an employer because the employer failed to reasonably accommodate their disability, or, alternatively, can sue because the employer terminated them in the belief that the person was disabled, when, in fact, he or she was fully capable of performing his or her job.  In the present case, Plaintiff has made no allegations that Defendants violated her ADA rights by failing to make reasonable accommodations for her condition.  Plaintiff's ADA claim is based solely upon allegations that Defendants terminated her from a position even though she was still capable of performing that job.

The Supreme Court of the United States has laid out a three-step procedure for establishing a violation of federal antidiscrimination law.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  This procedure applies to claims brought under the ADA.  *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).  In the first step, the Plaintiff must establish a *prima facie* case for discrimination.  Once this has been established, there is then a presumption of discrimination.  At this point, the burden shifts to the defendant, who must give a legitimate, nondiscriminatory purpose for the action.  If such a legitimate and nondiscriminatory reason for the action is given, the burden then shifts yet again to the plaintiff, and the plaintiff must show, by a preponderance of the evidence, that the reason given by the defendant was a mere pretext, and that the true motivation for the action in question was in fact discriminatory.

In the ADA context, in order to establish a *prima facie* case of discriminatory action, Plaintiff must show: (1) that she was in a protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse employment action, she was performing at a level that met her employer's expectations; and (4) that the circumstances surrounding the

6

adverse employment action give rise to a reasonable inference of unlawful discrimination. *Ennis*, 53 F.3d at 58. *See also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Defendants do not dispute that Plaintiff was terminated, which is an adverse employment action within the meaning of the ADA. Defendants do, however, assert that Plaintiff has failed to make the mandatory showing on the other three elements for a *prima facie* ADA discrimination claim.

This Court will first examine whether or not Plaintiff has shown she is a member of a protected class. The Magistrate Judge recommended that Defendants' Motion for Summary Judgment be granted on the ground that Plaintiff has not met her burden of demonstrating that she is a member of the protected class, and Plaintiff specifically objected to this Recommendation.

In order to be a member of the protected class, Plaintiff must show that she is "[a]n individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This is the principal point of contention in this case—Plaintiff asserts that, at the time she was discharged from her employment, she was fully capable of performing the job of quality specialist, while Defendants assert that Plaintiff was plainly no longer capable of performing the duties of this position, and made this inability apparent through her words and actions both at the time and since being terminated.

The crux of Defendants' argument is that upon filing for disability benefits with the Social Security Administration and the South Carolina Workers' Compensation Commission, Plaintiff represented that she was so severely disabled that she was no longer able to find any

7

other kind of gainful employment. Defendants also allege that Plaintiff has stated numerous times in statements and deposition testimony that she was unable to perform her job as quality specialist at the time her employment was terminated, and that her condition has remained unchanged since the date of her injury. Since Plaintiff made representations of total disability in other proceedings, particularly her claim for disability benefits from the Social Security Administration (which she ultimately received), Defendants claim that Plaintiff is judicially estopped from making a contrary claim in this proceeding. Plaintiff strongly disagrees with this characterization, and claims that her position has always been that she was able to perform all the functions of her job at the time she was terminated, but that she became totally disabled later, and at that point was able to honestly represent to the Social Security Administration that she was completely unable to work.

The Supreme Court of the United States has explicitly held that filing for social security benefits does not necessarily preclude a court from finding that a terminated employee was able to fulfill their occupational duties as of the time of his or her termination. However, the Court also held:

> Nonetheless, in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim. Summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"-that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case-at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

8

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (internal citations omitted). Therefore, the fact that Plaintiff has filed for, and received, total disability benefits under the Social Security Act does not automatically bar her from also asserting a valid cause of action for discrimination under the ADA. However, as *Cleveland* clearly states, if a plaintiff has claimed to be totally disabled and filed for disability benefits, he or she must give a good explanation as to why these two disparate claims are not contradictory. The Third Circuit has further explained how courts should apply the *Cleveland* presumption:

> In *Cleveland,* the Supreme Court explained the method that courts should use in deciding whether a party, in the face of her own contrary assertions made in a prior proceeding, can make a preliminary showing sufficient to survive summary judgment in a subsequent case. There, the Court was considering a case involving a plaintiff who was suing her employer for wrongful termination under the Americans with Disabilities Act ("ADA"). She had previously obtained SSDI benefits, claiming that she was "totally disabled" and unable to work. In pleading her prima facie case under the ADA, she asserted that she was a "qualified individual"--in other words, "that she could 'perform the essential functions' of her job, at least with 'reasonable accommodation.' "
> In deciding whether the plaintiff's previous claim of total disability precluded her from subsequently claiming to be a "qualified individual" under the ADA, the Court applied judicial estoppel principles in terms that are familiar at the summary judgment stage. The Court was convinced that "pursuit, and receipt, of SSDI benefits *does not automatically estop* the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA." The Court instructed, however, that when a defendant claims a bar based on previous inconsistent assertions, a plaintiff "cannot simply ignore" her previous statements to the SSA. Instead, in order to establish her prima facie case, "she must explain why that SSDI contention is consistent with" her subsequent assertion in connection with her ADA claim. Thus, the Court essentially told us how to approach a claim of judicial estoppel in the summary judgment context.
> Upon deciding that the SSDI and ADA claims did "not inherently conflict to the point where courts should apply a special negative presumption," the Court went on to explain how the facts of each particular case should be examined in order to determine whether a genuine conflict exists between the plaintiff's contrary positions. The Court first laid out the framework for basic summary judgment analysis, and then articulated the following standard:
>
>> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an

9

>   explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."
>
>   In other words, a plaintiff "could not simply ignore the apparent contradiction," or "create a genuine issue of material fact . . . simply by contradicting . . . her own previous sworn statement." Instead, a plaintiff in this position is required to offer "a sufficient explanation," as described above.
>   The Court also drew a distinction between conflicting legal positions and contradictory factual assertions. In concluding that a claim under the ADA is not inherently inconsistent with a claim of disability for SSDI purposes, the Court noted that "[a]n SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, 'I am disabled for purposes of the Social Security Act.' " The Court, therefore, limited the import of its decision to cases involving such "context-related legal conclusions," and permitted courts to proceed with the usual judicial estoppel analysis when evaluating conflicting statements that are purely factual.

*Detz v. Greiner Indus., Inc.*, 349 F.3d 109, 115-17 (3d Cir. 2003) (citations omitted). Therefore, while *Cleveland* holds that a claim of total disability for social security disability purposes does not *automatically* bar an ADA discriminatory termination claim, a plaintiff does have to give the court a satisfactory explanation for the apparent discrepancy, and this explanation cannot be based upon "contradictory factual assertions."

The Magistrate Judge's R&R recommended to this Court that Defendants' Motion for Summary Judgment be granted, because Plaintiff has on numerous occasions made factual statements that she was unable to perform the responsibilities of a quality specialist on June 26, 2006, the date on which her employment was terminated. Since she has made these statements both in this proceeding and in proceedings to gain both social security disability benefits and workers' compensation benefits, the Magistrate Judge recommended that Plaintiff should be judicially stopped from making any contrary claim. The Magistrate Judge then concluded that

since Plaintiff has conceded that she was unable to perform the position from which she had been terminated on the date of that termination, she has plainly failed to show that she was a "qualified individual" under the ADA, and thus has also failed to establish a *prima facie* case of ADA employment discrimination. Accordingly, the Magistrate Judge recommends that this Court hold that Plaintiff's cause of action against Defendants fails as a matter of law.

Plaintiff objected to this recommendation of the Magistrate Judge. Plaintiff asserts that the Magistrate Judge's holding on the judicial estoppel issue was in error, because she has consistently claimed that she was a qualified individual at the time she was terminated, but became totally disabled after that date, which qualified her for social security benefits. In support of this, she provided an Affidavit given by her after she had been deposed and after Defendants had moved for summary judgment, in which she stated that as of the date of being placed on medical leave she was capable of performing the job with reasonable accommodations. Plaintiff also provided a doctor's diagnosis dated August 4, 2006, which says that she is able to return to work with some restrictions.

However, Plaintiff cannot escape the fact that she clearly and repeatedly stated in this proceeding and her proceedings to get social security disability benefits and worker's compensation benefits that she was completely disabled as of the date of her termination. In her deposition, taken on April 15, 2008, Plaintiff made the following statements:

> Q: Why have you not sought employment since you left the employment of Dayco?
>
> A: Because I did not feel that I was able to do that as a full-time job to anyone— with anyone.
>
> Q: And why is that?

11

A: Because with the pain that I have in my shoulder, there are some restriction there as to what I can do, and I have no control over the headaches that is associated with it.

Q: And you say your headaches are associated with it. Headaches associated with your shoulder injury?

A: Yes.

Q: Is there any other reason why you wouldn't feel you were able to work a full-time job?

A: Emotionally I am just kind of out of it.

Q: Can you describe a little more what you mean by emotionally out of it?

A: When I think of what they did to me, the hurt brings on either tears or depression feelings, and in some cases just angry because of the way I was treated.

Q: And when you say they, you mean Dayco?

A: Yes, and Dayco's representatives.

Q: Is there any other reason why you feel you are not able to work a full-time job?

A: Not that I can think of.

Q: Okay. Has any physician or other medical provider placed you on a restriction that won't allow you to work?

A: Dr. Johnston in late 2005 said not until after surgery on one of his documents that he sent to Dayco about a month or so after I was terminated.

Q: You said he said not until—he said no work until after surgery?

A: Correct. (Pl.'s Dep. at 23-24.)


Q: Okay. And you are currently receiving Social Security benefits today?

A: Yes.

Q: And what is your understanding as to why you are receiving Social Security benefits?

A: Because of my disability.

Q: In light of your inability to work?

A: Correct. (Pl.'s Dep. at 32-33.)

12

Q: So your pain level—it sounds like then that your pain level and your activities of daily living have basically gone unchanged today, since the time that you were employed with Dayco but after the injury?

A: Correct, I still have just as much pain.

Q: And you still have just as many limitations?

A: Yeah.  I still have trouble with simple things like hygiene in the bathroom, so yeah.  (Pl.'s Dep. at 40.)

Q: Do you believe at that time [that Plaintiff was last employed by Dayco] you would be able to consistently eight to five Monday through Friday hold a position where you sat at a computer and talked on the telephone and held meetings with personnel?

A: No.

Q: And that is for the reasons we already discussed.  Do you want me to clarify?

A: Yeah, clarify.

Q: I had asked you earlier if you had looked for employment since your termination of employment from Dayco, and you said you had not, and I asked you why, and we discussed reasons.

A: Uh-huh.

Q: I am just trying to expedite things.  Are those the same reasons why you don't feel that you would be able to hold an employment position now where eight to five Monday through Friday you would answer phones, work on a computer, sit behind a desk for interview, work with employees or work on a plant floor?

A: More or less, yeah.  (Pl.'s Dep. at 67-68.)

From Plaintiff's deposition testimony, then, it is clear that she: (a) believes that she is so severely disabled that she cannot seek employment; and (b) that this disability has not substantially changed since she was last employed by Dayco.

This is in stark contradiction to what Plaintiff now claims, which is that she was fully capable of performing her job if reasonable accommodations were made.  As the *Detz* court made clear, "[t]he [*Cleveland*] Court, therefore, limited the import of its decision to cases

13

involving such 'context-related legal conclusions,' and permitted courts to proceed with the usual judicial estoppel analysis when evaluating conflicting statements that are purely factual." *Detz*, 346 F.3d at 117 (citing *Cleveland*, 526 U.S. at 802). Therefore, if this Court finds that Plaintiff has made factual statements in this proceeding or related proceedings that contradict her claim that she was capable of fulfilling her occupational duties and was therefore a qualified individual under the ADA, it may apply the doctrine of judicial estoppel.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). The purpose of this doctrine of judicial estoppel is " 'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982), and *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)). Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). The Supreme Court has held:

> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. at 750-51 (citations omitted).

Here, the Court has no alternative but to conclude that Plaintiff has made at least one contradictory factual statement. In the course of this proceeding, Plaintiff has claimed: (1) that she is completely disabled and unable to work; (2) that she was not completely disabled when her employment was terminated by Defendants; and (3) that her current condition is unchanged from her condition when she was put on medical leave by Defendants. All three of these assertions simply cannot be true. Therefore, the Court must conclude that Plaintiff's current position is "clearly inconsistent" with her position taken earlier in this litigation and in prior proceedings before the Social Security Administration.[2]

The second inquiry this Court must make is whether or not Plaintiff was successful in convincing a court to accept its earlier position. Plaintiff has fully acknowledged that she is considered to be fully disabled by the Social Security Administration, and is currently receiving disability benefits. While not formally a court, an earlier success in an administrative proceeding may certainly be considered by a court in determining whether or not a party is judicially

---

[2] The Court also notes that because of the circumstances, it must give more credence to Plaintiff's earlier representations than her current representations. Plaintiff's recent Affidavit claiming that she was capable of work when she was put on medical leave amounts to little more than a self-serving, conclusory allegation made after Defendants had moved for Summary Judgment. Furthermore, the Fourth Circuit has held that no issue of fact is raised when a Plaintiff merely gives a personal affidavit which contradicts his or her earlier deposition testimony:

> The entire content of the affidavit is conclusory, it does not set forth facts of which the plaintiff has personal knowledge and it does not give specific facts, but only generalities. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.

*Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (citations omitted).

estopped from taking a position contradictory to a position previously taken. *See, e.g.*, *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 789-90 (7th Cir. 1999) (holding that where plaintiff had previously represented that she was totally disabled and received Social Security disability benefits, she was precluded by judicial estoppel by making contradictory claims in an ADA discrimination claim). Since Plaintiff represented to and convinced the SSA that she was completely disabled, the Court must conclude that Plaintiff was successful in her prior factual position.

Finally, this Court must consider whether Plaintiff would derive an unfair advantage from these inconsistent positions. If Plaintiff were to prevail on this cause of action, she would simultaneously be receiving benefits for being completely disabled, and damages from Defendants for terminating her employment even though she was *not* disabled. This would happen despite the fact that Plaintiff plainly acknowledged in her deposition testimony that her condition had not materially changed between the time she was placed on medical leave and the time she began receiving disability benefits from the Social Security Administration. Simply put, Plaintiff would be receiving compensation for both being disabled and for not being disabled, and the Court cannot see how this would be anything other than an unfair advantage.

Therefore, the Court must agree with the Magistrate Judge's recommendation that Plaintiff is judicially estopped from recovering on her ADA discrimination claim. The doctrine of judicial estoppel exists to deal with exactly this sort of situation, where Plaintiff is taking one position in one proceeding and a directly contrary proceeding in another proceeding depending on which position best serves the Plaintiff's advantage. One of the fundamental functions of the legal system is to try and reach the truth in each and every case, and to allow a party to continually make contradictory factual allegations in different proceedings and to possibly be

entitled to compensation on each of those contradictory theories would make a mockery of the legal process.

Accordingly, the doctrine of judicial estoppel precludes Plaintiff from now claiming that she was capable of working at the time of her termination, and she is not a qualified individual under the ADA. Therefore, her claim of discriminatory termination in violation of the ADA fails as a matter of law.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Dayco Products, LLC and Mark IV Industries' Motion for Summary Judgment be **GRANTED**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**February 10, 2009**